PEOPLE v WRIGHT

1. CRIMINAL LAW—DEFENSES—INSANITY—TEMPORARY INSANITY—IN-
STRUCTIONS TO JURY—CRIMINAL RESPONSIBILITY.

An instruction to the jury that one who indulges in that conve-
nient form of insanity referred to as temporary or emotional
insanity, which lasts just long enough to enable him to commit
an act of violence, is not relieved of criminal responsibility, is
not erroneous where the instruction is given in the context of
distinguishing pure passion from legal insanity and the com-
plete instruction on insanity considered as a whole is proper.

2. CRIMINAL LAW—PROSECUTORS—CLOSING ARGUMENT—INSANITY—
FORENSIC EXAMINATION—REASONABLE INFERENCES—COMMENT.

A prosecutor may properly make reference in his closing argu-
ment to the results of a forensic examination which concluded
that a defendant who asserted the defense of insanity was
competent to stand trial, since the prosecutor has a right to
comment on the evidence and the reasonable inferences to be
drawn therefrom.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—INSANITY—ACQUITTAL—
CONTROL OF DEFENDANT—SENTENCING DISCRETION.

An instruction to the jury that the court will have no further
control over a defendant if he is acquitted by reason of insanity
is not erroneous where the jury is fully informed of the conse-
quences of a verdict of not guilty by reason of insanity, and the
instruction as fairly interpreted means that the judge has no
sentencing discretion when such a verdict is reached.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 42, 44, 51.
[2, 5, 6] 30 Am Jur 2d, Evidence § 1022.
  75 Am Jur 2d, Trial §§ 166, 167, 708.
[3] 21 Am Jur 2d, Criminal Law §§ 63, 68.
[4] 21 Am Jur 2d, Criminal Law §§ 64, 73.
[7] 29 Am Jur 2d, Evidence §§ 555–557.
[8] 29 Am Jur 2d, Evidence § 831.
  Physiological or psychological truth and deception tests. 23 ALR2d
  1306.

4. CRIMINAL LAW—DEFENSES—INSANITY—EVIDENCE—LAY-WITNESS
   TESTIMONY—MENTAL CONDITION—OPPORTUNITY TO OBSERVE—
   PROXIMITY IN TIME.

   A trial court should use discretion in allowing lay-witness testimony on the issue of a defendant's sanity and must consider the character and nature of the alleged mental condition, as well as the opportunity of the witness to observe the speech, manner, habits, and conduct of the defendant, and whether the witness had sufficient acquaintance with the defendant to be able to testify on a comparative basis, and the proximity in time between those observations and the criminal act.

5. CRIMINAL LAW—PROSECUTORS—DEFENDANT AS WITNESS—CLOSING
   ARGUMENT—COMMENT ON EVIDENCE.

   A prosecutor may state in closing argument that defendant is dishonest and a liar where the evidence introduced at trial clearly establishes that defendant did in fact lie, since the prosecution is allowed fair comment on the evidence.

6. CRIMINAL LAW—CLOSING ARGUMENT—ATTORNEY COMMENT—WIT-
   NESSES—CONFLICTING TESTIMONY.

   An attorney may state to the jury his belief that a witness is or is not entitled to credence in a trial where the testimony is conflicting, and the result depends upon which witnesses the jury finds are truthful.

7. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—EX-
   CULPATORY STATEMENTS—ADVISING OF RIGHTS—LACK OF OBJEC-
   TIONS.

   An exculpatory statement made by a defendant while in custody after he had indicated that he wanted to talk to his wife about a lawyer was properly allowed in evidence where the defendant was fully advised of his *Miranda* rights and chose to answer questions anyway and where a second statement more detailed than that objected to was admitted without objection.

8. CRIMINAL LAW—EVIDENCE—POLYGRAPH PROCEDURE—INADVERTENT
   REFERENCE—APPEAL AND ERROR.

   A brief, inadvertent reference to a polygraph procedure does not constitute reversible error.

Appeal from Midland, James R. Rood, J. Submitted Division 3 December 4, 1974, at Lansing. (Docket No. 16938.) Decided February 24, 1975.

Raymond L. Wright was convicted of rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward G. Durance,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, by *Howard C. Marderosian,* of counsel), for the people.

*Elizabeth Schwartz,* Assistant State Appellate Defender, for defendant.

Before: D. E. HOLBROOK, P. J., and R. B. BURNS and VAN VALKENBURG,* JJ.

D. E. HOLBROOK, P. J. Raymond Wright, defendant, was charged with the crime of rape, and jury-convicted on February 9, 1973. On February 21, 1973, he was sentenced to life imprisonment. He now appeals as of right.

The offense occurred on June 7, 1972, in the morning sometime after complainant's husband departed for work. Defendant came to complainant's home, represented he was having car trouble, and requested to use the telephone to call his wife. Complainant allowed defendant to use the phone. At the time the complainant was eating breakfast with her two daughters, six and five years of age. After using the phone, defendant came back into the kitchen. He appeared nervous and quite concerned about losing his job because he was going to be late. Complainant then fixed him a cup of coffee. At defendant's request complainant said he could use the bathroom. When he came out of the bathroom, he went and picked up complainant's

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

oldest daughter, pulled out a knife with a four-inch blade, and threatened the child. He handed complainant a note which read: "Put your hands behind you or I will kill your girls". Defendant tied complainant's hands behind her with an electric shaver cord. The defendant then took complainant and her daughters upstairs. After checking to see if there was anyone else upstairs, he threw complainant on the bed and had the girls stand over in the corner of the room. The defendant had the knife pointed at complainant and near her. Complainant begged him repeatedly not to do anything to her and said: "You have a wife". He replied: "Damn it, I know I do". Defendant told the little girls to remove their pants. Complainant then begged him to leave the little girls alone. Defendant then proceeded to rape the complainant and shortly thereafter left the house.

The defense presented by defendant at trial was insanity. After defendant's arrest, he gave two statements to the police. In the first statement he denied the assault and rape. This statement was objected to by defense counsel, but was admitted upon a finding by the court that it was made voluntarily after the *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), warnings were fully given and defendant had signed the statement. In the second statement defendant admitted the offense and gave a detailed account of what had happened. This statement was not objected to, and was admitted as having been voluntarily given by the defendant.

The defendant raises several issues to be considered on appeal.

## I

Defendant claims that the trial judge committed

reversible error when he charged the jury in part as follows: "One who indulges in that convenient form of insanity referred to as temporary or emotional insanity, which lasts just long enough to enable him to commit an act of violence, is not relieved from criminal responsibility".

The defendant argues that this instruction undercut his insanity defense because it conveyed to the jury the implication that the defendant fabricated this theory in order to save himself. The above quoted instruction was approved by the Supreme Court in *People v Finley,* 38 Mich 482; (1878), in the context of distinguishing pure passion from legal insanity. See also *People v Johnson,* 53 Mich App 329, 334; 220 NW2d 65, 68 (1974). We consider instructions as a whole to determine if an instruction is proper. *People v Carr,* 2 Mich App 222; 139 NW2d 329 (1966), *People v Weems,* 19 Mich App 553; 172 NW2d 865 (1969), and *People v Dye,* 356 Mich 271; 96 NW2d 788 (1959). After a careful review of the instructions given the jury, we are convinced the trial court properly instructed the jury on the definition of insanity, including the "irresistible impulse" element.

## II

Did the trial judge and the prosecuting attorney erroneously intermingle the terms of (1) competent to stand trial with (2) the defense of insanity?

The subject of this issue was the report of a forensic examination conducted on the defendant and introduced into evidence at the trial by defense counsel with a stipulation providing that a cautionary instruction would be given to the jury. The cautionary instruction given by the court was as follows:

"This is a letter addressed to myself as circuit judge and it deals with Raymond Wright. You heard that letter read and this psychiatric consultant at Ann Arbor is simply reporting to the court that at the request of the court this defendant was examined and that he was found to be fit for trial, that he understood the nature of these proceedings against him, that he was able to cooperate with his attorney and in connection with his defense and so forth. In other words, that he was competent to stand trial.

"Now, this determination was made on July 12th, 1972. The purpose of this was not to decide whether or not he was competent on June 7th, 1972; this was for the only purpose of deciding whether he was competent to stand trial. And you should consider it for that purpose only."

The prosecutor in closing argument stated that defendant was found legally competent to stand trial. In defendant's closing argument, counsel noted the difference between competency to stand trial and legal insanity. As we have previously ruled, the trial judge gave a thorough instruction on the test of insanity and the cautionary instruction did not, in our opinion, confuse the issue for the jury.

The prosecutor did not commit reversible error in his closing argument as he had the right to comment on the evidence and the reasonable inference to be drawn therefrom. *People v Margaret Jones,* 48 Mich App 334, 343; 210 NW2d 396, 400 (1973). It was thus proper for the prosecutor, in his closing argument, to make reference to the forensic examination result.

### III

Did the trial court properly instruct the jury on

the disposition of the defendant under a verdict of not guilty by reason of insanity?

Defendant claims that the instruction given was not proper under *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969). The *Cole* instruction given in the instant case is as follows:

"I will tell you, however, that if you should reach a verdict in this case of not guilty by reason of insanity, if you find that verdict, then I will inform you that this does not mean that the accused will go free. *It means that I have no further control over him as judge of this court.*

"It means that I will commit him to the mental health authorities of the State of Michigan. And that statute [MCLA 767.27b; MSA 28.966(12)] reads as follows: Any person who is tried for a crime and is acquitted by the court or jury by reason of insanity shall be committed immediately by order of the court to the Department of Mental Health for treatment in an appropriate state hospital until discharged in accordance with law.

"This means that this man, if you reach such a verdict, will be committed to the Department of Mental Health and he will remain there in an institution to be selected by them and that he will remain there until such time as they decide to release him. *This court will have no further control over him."* (Emphasis supplied.)

The purpose of the *Cole* instruction is to insure that the jury is informed of the consequences of a verdict of not guilty by reason of insanity, and for the further reason to inform them that such a verdict would not immediately set the defendant free.

The emphasized portions of the subject instruction, defendant asserts, accomplished what the instruction was intended to prevent, *i.e.,* jury fear of a quick release for the defendant. We interpret the challenged portions of the instruction were to

the effect that the judge had no sentencing discretion when the defendant is found not guilty by reason of insanity. This fact being true, and the jury being fully informed of the necessary facts under *Cole,* no error was committed. *People v Widgren,* 53 Mich App 375; 220 NW2d 130 (1974).

## IV

Was a proper foundation laid for the admission of lay testimony on the question of defendant's sanity?

Defendant concedes that lay testimony can be admitted on the question of insanity. He claims, however, that the lay witnesses in the instant case were not sufficiently acquainted with the defendant to provide proper foundations for such opinions.

The prosecutor submitted the testimony of five men who worked with the defendant, concerning defendant's sanity. This evidence was admitted by the court over the objection of the defendant.

James McClellan testified that he was the president of Mac Distributing Company and that the defendant was employed by the company. He testified that over an eight-week period he had an opportunity to spend two to three hours a day with the defendant.

Jack Moeller, also an employee of the Mac Distributing Company, testified that he was with the defendant on a daily basis and talked with him on those occasions.

Wayne Cummings, an employee of Mac Distributing Company, testified that he worked with the defendant and would spend three to four hours a day with him. During this time they would load

trucks together and would talk together. Further, they would often eat lunch together.

Jack Kessler testified that he was an employee for Mac Distributing Company and that he would go on deliveries with the defendant who was a truck driver.

Bill Buddy testified that he was a driver and serviceman with the Mac Distributing Company and worked with the defendant on a daily basis.

In general, the question of competency of witnesses is for the trial court, and the credibility of the witnesses is for the jury. *People v Charles Wilson,* 27 Mich App 171; 183 NW2d 368 (1970), and *People v Collins,* 43 Mich App 259; 204 NW2d 290 (1972). The trial court should use discretion in allowing a lay witness to testify on the issue of defendant's sanity. *People v Cole, supra.* In *Cole* our Supreme Court laid down some guidelines to be followed by the trial court when exercising its discretion to admit lay-witness testimony on the issue of defendant's insanity. These are as follows at 382 Mich 710–711; 172 NW2d at 361:

First, before a lay witness is permitted to state an opinion regarding the sanity or insanity of the defendant the witness must have had ample opportunity to observe "speech, manner, habits, or conduct", of the defendant.

"To render himself competent under this rule, *the witness must establish he was sufficiently acquainted with the defendant or testator so as to testify to mental condition on a comparative basis and not merely to some manifested idiosyncrasy or eccentric behavior."* (Emphasis in original.)

Second, the trial judge must also consider the character and nature of the alleged mental condition.

Third, it must appear that the witness took advantage of the opportunity to observe closely the person whose mental condition is at issue.

Fourth, there must be a proximity in point of time between the act involved ánd the facts and circumstances offered as the basis to render and support the non-expert's opinion.

The prosecution submits upon a review of the testimony of the lay witnesses in question in the instant case that the above standards enunciated by our Supreme Court in *Cole, supra,* have been fully complied with.

In the case of *People v Alsteens,* 49 Mich App 467, 473–474; 212 NW2d 243, 246 (1973), it is stated:

"We note at the outset that defendant's reliance upon *People v Cole, supra,* ignores the fact that no controlling majority opinion was rendered in that case. Justices KAVANAGH, DETHMERS, and BRENNAN concurred upon the necessity to lay a foundation for lay witnesses' opinion evidence of sanity or insanity, requiring that the witness have the opportunity to observe the speech, manner, habits, or conduct of the person in addition to establishing sufficient acquaintance with the defendant so as to be able to testify on a comparative basis. Justice ADAMS concurred in the result, but relied upon the rule stated in *People v Zabijak,* 285 Mich 164, 185; 280 NW 149, 157 (1938), that '[a] nonexpert witness who has had ample means to observe and form conclusions as to the mental condition of a person and who testifies to pertinent facts on which his conclusions are based may state his conclusions as to the insanity of a person'. Justice KELLY concurred specially, stating that insufficient evidence was introduced to prove defendant's sanity. Reversal in *Cole,* then, was based upon either the lack of opportunity to compare the witness's conduct on different occasions, the lack of ample means to observe, form conclusions or testify to the facts upon which the conclusions were based, or the insufficiency

of evidence to outweigh that which casts a reasonable doubt as to defendant's sanity. Failing to arrive at a majority opinion on this issue, *Cole* is of limited precedential value."

The *Alsteens* case held that lay testimony on the insanity issue was admissible, provided the witnesses had a sufficient opportunity to observe the defendant. The question was treated as one of weight to be accorded the evidence and not one of admissibility. See also *People v McBride,* 55 Mich App 234; 222 NW2d 195 (1974).

The lay testimony in the present case was properly admitted under the ruling in *Cole, Alsteens* and *McBride.* Unlike the police officers in *Alsteens* and *McBride,* the witnesses in the instant case were in continuous daily contact with defendant over a period of eight weeks up to the time of the offense. We deem that the witnesses had the proper qualifications to state an opinion on the defendant's sanity. See *State v Griffin,* 99 Ariz 43; 406 P2d 397 (1965), where it was held that the trial court properly permitted opinions as to a homicide defendant's sanity by three persons with whom defendant had worked and who had known defendant approximately six weeks. We rule the lay-opinion evidence in the instant case was properly admitted.

## V

Did the prosecutor improperly express his personal belief as to the credibility of the defendant and his expert witness?

Defendant asserts that he was denied a fair trial because the prosecutor expressed his personal belief that the defendant's story was not credible, and that the prosecutor improperly attacked the

credibility of the defendant's expert witness. The claimed error has to do with two statements made by the prosecutor during closing argument. The first statement is as follows:

"We submit to you, ladies and gentlemen of the jury, there is no insanity on the part of Mr. Wright. Mr. Wright's actions both at the time of the crime and the time after the crime, the time during the interviews with the doctors, is dishonest and a liar. Dishonest and lying to Dr. Carron. Dishonest and lying to Mr. Whipple."

At first blush this statement appears to be improper; however, an examination of the record shows that it was not. The defendant's own statement introduced into evidence (Exhibit No. 43) and not challenged on appeal, reveals that defendant lied to Officer Whipple when first arrested. Secondly, the testimony of Dr. Carron established that the defendant also held back in his interview with him. Therefore, the prosecutor's statement was proper and related to the evidence in the case. Comments on the evidence are proper. *People v Margaret Jones, supra.*

The second challenged statement concerned the testimony of defendant's expert witness and reads as follows:

"I don't know Dr. Knesper. I was impressed by his presentation, but you must look to his credibility. You look to a resident. His first time in court. His first presentation of a criminal defense. And you weigh that against a man of twenty-one years, against 300 testifyings in court, and a total practice of all that time."

In this case, defendant admitted the crime but claimed that he was insane at the time. This required the court and the jury to determine

whether he was guilty or not guilty by reason of insanity. There was an expert witness that testified on behalf of defendant, and there was an expert witness that testified on behalf of the people. The jury could not believe the opinions of both experts for they were contrary to each other. In the case of *People v Wirth,* 108 Mich 307, 308–309; 66 NW 41, 42 (1896), it is stated in part as follows:

"We are not aware of any decision which holds that an attorney may not state to the jury his belief that a witness is or is not entitled to credence, in a case where the testimony is conflicting, and the result depends upon which witnesses the jury find are truthful [correct]. A broad latitude must be allowed in such cases."

We rule that the comment by the prosecuting attorney was a fair comment on the evidence of the two expert witnesses.

## VI

Did the trial court err in allowing into evidence an exculpatory statement made by defendant while in police custody?

Shortly after his arrest, the defendant was given *Miranda* warnings preceding questions by Officer Whipple. The waiver form reads in pertinent part as follows:

"This subject was delivered to me by Bobalek. He was immediately given this form to read and stated that he could read. I asked subject if he understood his rights and he stated that he did. Subject stated that he wanted to talk to his wife. Advised that he could later. Subject then stated that he would answer some questions but wanted to talk to his wife about a lawyer. I advised him that if he wanted to talk to a lawyer I could not talk to him. Subject then stated as long as he

could answer only, over, some questions, he would sign his waiver, which he did. Subject also stated he had seen on his card downstairs where he was being charged with rape. I advised him that the department had received a complaint and that I was interviewing him on an assault charge. The prosecutor would have to make the determination on the charge. M.W., 9:22 p.m., 6-7-72."

This statement was made after *Miranda* warnings were given and the waiver by the defendant was signed. The waiver was admitted without objection. The statement of the defendant followed. This statement was admitted over objection. In *Miranda, supra,* it is stated: "If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 US at 444-445; 86 S Ct at 1612; 16 L Ed 2d at 707. Specifically Officer Whipple mentioned to the defendant: "I advised him that if he wanted to talk to a lawyer I could not talk to him".

The defendant was fully advised that if he wanted to talk to an attorney before giving a statement he could, but he chose to answer some questions. The *Miranda* warning on Exhibit 32 stated: "If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer". The defendant said he understood and signed the waiver which read:

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no

pressure or coercion of any kind has been used against me."

It would appear that the ruling of the trial court was not clearly erroneous because the defendant did not request to see a lawyer before answering the subject questions.

In this connection, it is well to point out that a second, more damaging statement was taken from the defendant and admitted into evidence (Exhibit 43). The admission of the second statement is not challenged on appeal.

The defense of the defendant was insanity, and inasmuch as the second statement was much more in detail than the first statement and defendant admitted the crime, it is difficult for us to determine that this first statement was prejudicial to the defendant. No reversible error is present as to this issue.

## VII

Under the facts in this case was the reference to defendant's refusal to submit to a polygraph examination reversible error?

The people concede that polygraph results are inadmissible, but claim that this inadvertent reference should not be the basis for reversible error.

The entire statement of the defendant was read into the record and the pertinent portion is as follows:

" 'Q. (by Officer Whipple): Your version of what happened here in Midland County differs to what the complainant has told us. Would you be willing to submit to a polygraph examination?
" 'A. No.' "

A brief inadvertent reference to a polygraph procedure has been ruled to not constitute reversible error. *People v Tyrer,* 19 Mich App 48; 172 NW2d 53 (1969), *dismissed* 385 Mich 484; 189 NW2d 226 (1971). We conclude that the unobjected to reference in this case, though improper, does not mandate a new trial. The rape herein was proved by the overwhelming weight of the evidence and beyond a reasonable doubt. The mentioned polygraph examination did not prejudice defendant in his insanity defense. No miscarriage of justice has resulted from this error.

Affirmed.