PEOPLE v GOAD.

PEOPLE v GILLEN

Docket Nos. 68415, 70666. Argued April 3, 1984 (Calendar Nos. 2, 3).
—Decided December 28, 1984. Released January 29, 1985.

Eddy R. Goad was convicted by a jury in the Shiawassee Circuit
Court, Peter J. Marutiak, J., of two counts of first-degree
criminal sexual conduct. The Court of Appeals, Danhof, C.J.,
and M. F. Cavanagh and Freeman, JJ., affirmed in an opinion
per curiam (Docket No. 50591).

Coties L. Gillen was convicted by a jury in the Kent Circuit
Court, Robert A. Benson, J., of armed robbery and possession of
a firearm during the commission of a felony. The Court of
Appeals, R. B. Burns, P.J., and MacKenzie and Brown, JJ.,
affirmed in an unpublished opinion per curiam (Docket No.
56532).

Both defendants appeal, alleging that the instruction of the
juries, over their objections, as to the consequences of returning
verdicts of not guilty by reason of insanity was error.

In an opinion by Justice Brickley, joined by Justices Levin
and Ryan, in *Goad* and Justices Levin, Ryan, and Cavanagh in
*Gillen*, the Supreme Court *held:*

The giving of dispositional instructions in these cases was
error. Because of the numerous possible contingencies under
the dispositional statute, no instruction could adequately de-
scribe the disposition to be made of a person found not guilty
by reason of insanity. However, the assertion that the instruc-
tions made a verdict of guilty more likely is pure speculation
and reversal is not required.

1. The disposition of a person found not guilty by reason of
insanity is governed by the provisions of the Mental Health
Code. The procedure prescribed by the code is so complex and
the contingencies are so numerous, however, that neither a
jury nor any other person can predict the disposition of a
defendant. The code refers to nine other statutes without which

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 75 Am Jur 2d, Trial § 738 *et seq.*

it cannot be understood, and the statutes referred to, in turn, refer to still other provisions.

2. The Criminal Jury Instructions at issue attempt to inform a jury of the disposition of a defendant found not guilty by reason of insanity by paraphrasing and summarizing portions of the code. Even if it were possible to draft an instruction that completely and accurately described such a disposition, any attempt to do so is unacceptable. Thus, prospectively from thirty days after the filing of the decision of these cases, jurors shall not be given any information regarding the disposition of a defendant after a verdict, including the Criminal Jury Instructions.

3. The assertion that the giving of the Criminal Jury Instruction in these cases made it more likely that a guilty verdict would be returned than had no dispositional instruction been given, without information to the contrary, is pure speculation. Affirmed.

Justice Boyle, joined by Chief Justice Williams, dissenting, stated that the instructions on the disposition of the defendants were truthful and accurate. It is just as wrong and erroneous to mislead a jury into believing there is no public safety factor in a verdict of not guilty by reason of insanity because a defendant will not be released until it is certain that he will not commit further violent crime as it is to mislead a jury into believing a defendant will automatically be released from a mental hospital within a very short time if such a verdict is returned. The best way to combat efforts by the defense and the prosecution to persuade the jury to accept their respective versions of the defendant's disposition is to instruct the jury on what the law provides. Confidence in the jury should override the fear that somehow knowledge of what happens to a defendant when a verdict of not guilty by reason of insanity is returned will result in an unjust verdict.

109 Mich App 726; 311 NW2d 457 (1981) affirmed.

## Opinion of the Court

1. CRIMINAL LAW — JURY INSTRUCTIONS — INSANITY — DISPOSITION OF DEFENDANT.

A jury may not be instructed with respect to the disposition of a defendant found not guilty by reason of insanity, including an instruction based on the Criminal Jury Instructions; the disposition of such a person is controlled by the Mental Health Code and involves contingencies so numerous that neither the jury nor any other person can predict disposition (MCL 330.2050; MSA 14.800[1050]; CJI 7:8:07, 7:8:08).

DISSENTING OPINION BY BOYLE, J.

2. CRIMINAL LAW — JURY INSTRUCTIONS — INSANITY — DISPOSITION OF DEFENDANT.

*A jury should be instructed with respect to provisions in the law for the disposition of a defendant found not guilty by reason of insanity; it is just as wrong and erroneous to mislead a jury into believing there is no public safety factor in returning such a verdict because a defendant will not be released until it is certain that he will not commit further violent crime as it is to mislead a jury into believing a defendant will automatically be released from a mental hospital within a very short time after the verdict is returned, and such instruction is the best way to combat efforts by the prosecution and the defense to persuade the jury to accept their respective versions of disposition.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David E. McClernan,* Prosecuting Attorney, and *Michael J. Moquin,* Assistant Attorney General, for the people in *Goad.*

*Paul K. Hood* for defendant Goad.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people in *Gillen.*

*George S. Buth* for defendant Gillen.

BRICKLEY, J. In these cases we must decide whether trial judges may properly use CJI 7:8:08,[1]

---

[1] CJI 7:8:08 provides:

"(1) If you find the defendant committed the act but was not criminally responsible at the time, then he is not guilty by reason of insanity. If you make such a decision, the defendant will be immediately committed to the custody of the Center for Forensic Psychiatry for a period not to exceed sixty days.

"(2) During that time, the statute directs that the Center thoroughly examine and evaluate the present mental condition of the defendant in order to reach an opinion as to whether he is mentally ill and requires medical treatment.

"(3) Within the sixty-day period, the Center will file a report with the Court, prosecuting attorney and defense counsel. If the report

which explains to the jury the disposition to be made of defendants found not guilty by reason of insanity, over defendants' objections.

Defendant Goad was charged with two counts of first-degree criminal sexual conduct. MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). At trial, Goad raised an insanity defense and offered the testimony of a psychiatrist to the effect that he was legally insane at the time of the incident because of acute brain syndrome, a mental illness which results from an interference with the functioning of the brain. The prosecutor rebutted this testimony. Over defense counsel's objection, the trial court gave a dispositional instruction conforming with CJI 7:8:08.[2] The jury returned verdicts of

states that the person is not mentally ill or does not require treatment, the defendant shall be discharged [from custody].

"(4) If the report finds that the person is mentally ill and does require treatment, the Court may [will] direct the prosecuting attorney to file a petition with the Probate Court for an order of hospitalization or an order of admission to a clinical facility. If the Court so directs, the Center may retain the person pending such hearing.

"(5) If, after a hearing before the Probate Court, the defendant is found not to be mentally ill or not to be a person requiring treatment, the defendant shall be discharged [from custody].

"(6) However, if the person is ordered hospitalized, admitted to a facility or otherwise to receive treatment, he shall not be discharged or placed on leave without prior consultation with the Center for Forensic Psychiatry. Once hospitalized, the defendant will be hospitalized until his mental condition is such that he no longer is judged to require treatment."

[2] The trial court instructed the jury as follows:

"Now ladies and gentlemen of the jury, I have given you a lot of instructions, a lot of options. You will soon discover they are options. Let me give you some idea of what happens. If you find the Defendant committed the act, and when I use the word in the singular, I mean the singular or plural, since there are two counts. If you find the Defendant committed the act but was not criminally responsible at the time, then he is not guilty by reason of insanity. If you make such a decision, then this Court will immediately commit the Defendant to the custody of the Center for Forensic Society [sic] for a period not to exceed sixty days. During that time, the statute of Michigan directs that the Center thoroughly examine and evaluate the present mental condition of the Defendant, in order to reach an opinion as to whether he is mentally ill and requires medical treatment. Within

guilty on both counts, and Goad was sentenced to concurrent terms of life imprisonment.

On his appeal as of right, Goad claimed the dispositional instruction (CJI 7:8:08) should not have been given. The Court of Appeals, in an opinion per curiam, held that "a trial judge has independent authority" to give the disposition instruction, even over defendant's objection. *People v Goad*, 109 Mich App 726, 727; 311 NW2d 457 (1981). Accordingly, the Court of Appeals affirmed appellant's conviction because it found no instructional error requiring reversal.

Defendant Gillen was charged with one count of armed robbery, MCL 750.529; MSA 28.797; and one count of felony-firearm, MCL 750.227b; MSA 28.424(2). Gillen raised an insanity defense at trial, and two psychiatrists testified that he was suffering from a mental illness. In rebuttal, the prosecutor called a psychiatrist who testified that Gillen

the sixty day period, the Center will file a report with the Court, the prosecuting attorney and the defense counsel. If the report states that the person is not mentally ill or does not require treatment, the Defendant shall then be discharged from custody. If the report finds that the Defendant is mentally ill and does require treatment, the Court may direct the prosecuting attorney to file a petition with the Probate Court for an order of hospitalization or an order of admission to a clinical facility. If the Court so directs, the Center may then retain the person, pending such hearing. If after such a hearing before the Probate Court the Defendant is found not to be mentally ill or not to be a person requiring such treatment, the Defendant shall then be discharged. However, if the person is ordered hospitalized, admitted to a facility or otherwise to receive treatment, he shall not be discharged or placed on leave without prior consultation with the Center for Forensic Psychiatry. Once hospitalized, the Defendant will be hospitalized until his mental condition is such that he is no longer judged to require treatment."

Defense counsel requested that CJI 7:8:07 be given. CJI 7:8:07 provides:

"If you find the defendant committed the act but was not criminally responsible at the time, then he is not guilty by reason of insanity. If you make such a decision, the defendant will be immediately committed to the custody of the Center for Forensic Psychiatry for evaluation of his present mental condition and such further medical and legal proceedings as are then deemed necessary."

was not suffering from mental illness and was not legally insane. At the close of proofs, the trial judge, over defense counsel's objection,[3] gave the dispositional instruction, CJI 7:8:08. The jury returned a verdict of guilty but mentally ill on both counts.

In appealing his conviction, Gillen claimed the dispositional instruction was improper. The Court of Appeals affirmed the conviction, noting that the trial court complied with the duty to accurately instruct the jury as to the applicable law.

We granted leave to appeal for both cases and ordered that they be argued and submitted together, limiting the issue in each case to "whether the trial court erred in instructing the jury concerning the consequences of a verdict of not guilty by reason of insanity." 417 Mich 1036; 335 NW2d 468 (1983).

The rule in Michigan has always been that neither the court nor counsel should address themselves to the question of the disposition of a defendant after the verdict. Indeed, it is proper for the court to instruct the jury that they are not to speculate upon such matters,[4] and that they are to

---

[3] Defense counsel asked the trial court to "incorporate" the following language into the 7:8:08 instruction:

"[A] not guilty by reason of insanity [verdict] . . . means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the Court is satisfied, that such a person has recovered his sanity and will not, in a reasonable future, be dangerous to himself or others."

The Court of Appeals stated that "defense counsel objected to this instruction [7:8:08]." We accept the conclusion that the issue has been preserved for appeal.

[4] CJI 3:1:19 provides:

"(8) Do not concern yourselves during the trial or in your deliberations with what the penalty might be if you should find the defendant guilty. The question of guilty and the question of penalty are decided separately. It is the duty of the judge to fix the penalty whenever a defendant is found guilty. Possible penalties should not influence your decision."

confine their deliberations to the issue of guilt or innocence. *People v Szczytko,* 390 Mich 278, 285; 212 NW2d 211 (1973) (opinion of BRENNAN, J.).

In *Underwood v People,* 32 Mich 1 (1875), the defendant challenged the then existing statutory procedure for trial of persons who raised an insanity defense. The Court, in upholding the trial procedure, noted that "[t]he finding of the jury is confined to the prisoner's condition at the time of the commission of the alleged criminal act." *Id.,* p 2. The Court also stated that an "information . . . can lawfully embrace, no issue except the prisoner's guilt as charged." Any collateral inquiry would be foreign to the issue of the right of the jury to give a general verdict on the merits. *Id.*

In *People v Williams,* 218 Mich 436; 188 NW 403 (1922), the trial court had instructed the jury in part:

"[Y]ou are not concerned in the penalty, that is a matter for the discretion of this court, and if you were informed in any way as to the penalty that might be handed out, you should not be influenced thereby."

This Court held the instruction was not error. Defense had made allusions to the possible consequences of a guilty verdict and it was therefore proper for the trial court to give the above instruction.

In *People v Warner,* 289 Mich 516; 286 NW 811 (1939), the jury, after finding itself unable to render a verdict, asked the trial court if a verdict could be accompanied by a recommendation of leniency. The trial court answered in the affirmative, and the jury returned a verdict of guilty with a recommendation of leniency after a short time. This Court reversed, holding:

The use notes accompanying the instruction state that it is not to be used in insanity cases.

"Defendant was entitled to a fair trial and to a verdict by the jury upon the evidence without consideration of the punishment to be administered." *Id.,* p 521.

We quoted with approval the following language from a case with almost identical facts:

"The jurors should not have concerned themselves with the punishment, and ought to have been plainly told that they ought not to take that into consideration. Their function ended in deducing the truth from the evidence adduced and expressing it in their verdict. Anything said by the court calculated to draw their attention from the performance thereof, and to induce them to rest their conclusion upon ulterior considerations necessarily was misleading and prejudicial." *State v Kernan,* 154 Iowa 672, 677; 135 NW 362; 40 LRA(NS) 239 (1912).

Against this time-proven principle a limited exception has arisen. *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969). In *Cole* we noted that instructions as to a defendant's disposition are extraneous to the basic duty of the jury and should not be given since they would hinder rather than aid the jury in determining the issue of guilt. *Id.,* p 718. The reason for this rule is that jurors might disregard their oath to render a true verdict according to the evidence if concerned with extraneous considerations. Nevertheless, this Court held that the possible miscarriage of justice of imprisoning a defendant who should be hospitalized is a consideration that "far outweigh[s]" the fear that a jury would compromise its integrity and render a verdict based on factors other than the evidence. *Id.,* p 720.

We quoted with approval the following rationale from *Lyles v United States,* 103 US App DC 22, 25; 254 F2d 725 (1957), *cert den* 356 US 961 (1958):

"This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955 [69 Stat 710; DC Code § 24-301 (1951) (Supp 5)]. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts." 382 Mich 719-720.

This Court held that in trials "where the defense of insanity is present and that issue is submissible by the proofs, the defendant, upon his own timely request, or upon request of the jury, shall be entitled to an instruction in accord with the rule of *Lyles.*" *Id.,* pp 720-721.

At the time *Cole* was decided, the commitment procedure for persons acquitted by reason of insanity provided in part:

"Any person, who is tried for a crime and is acquitted by the court or jury by reason of insanity, shall be committed immediately by order of the court to the

department of mental health for treatment in an appropriate state hospital, until discharged . . . . The person shall not be released on convalescent care or final discharge without being evaluated and recommended for release by the center for forensic psychiatry." MCL 767.27b; MSA 28.966(12).

Effective in 1975, the Legislature passed the Mental Health Code which replaced most of the previous applicable statutes, including the dispositional statute in effect at the time *Cole* was decided. The statutory provisions for the disposition of a person found not guilty by reason of insanity are much more complex under the Mental Health Code. For example, the general dispositional statute, MCL 330.2050; MSA 14.800(1050), provides:

"(1) The court shall immediately commit any person who is acquitted of a criminal charge by reason of insanity to the custody of the center for forensic psychiatry, for a period not to exceed 60 days. The court shall forward to the center a full report, in the form of a settled record, of the facts concerning the crime which the patient was found to have committed but of which he was acquitted by reason of insanity. The center shall thoroughly examine and evaluate the present mental condition of the person in order to reach an opinion on whether the person meets the criteria of a person requiring treatment or for judicial admission set forth in section 401 or 515.

"(2) Within the 60-day period the center shall file a report with the court, prosecuting attorney, and defense counsel. The report shall contain a summary of the crime which the patient committed but of which he was acquitted by reason of insanity and an opinion as to whether the person meets the criteria of a person requiring treatment or for judicial admission as defined by section 401 or 515, and the facts upon which the opinion is based. If the opinion stated is that the person is a person requiring treatment, the report shall be accompanied by certificates from 2 physicians, at least 1

of whom shall be a psychiatrist, which conform to the requirements of section 400(j).

"(3) After receipt of the report, the court may direct the prosecuting attorney to file a petition pursuant to section 434 or 516 for an order of hospitalization or an order of admission to a facility with the probate court of the person's county of residence or of the county in which the criminal trial was held. Any certificates that accompanied the report of the center may be filed with the petition, and shall be sufficient to cause a hearing to be held pursuant to section 451 even if they were not executed within 72 hours of the filing of the petition. The report from the court containing the facts concerning the crime for which he was acquitted by reason of insanity shall be admissible in the hearings.

"(4) If the report states the opinion that the person meets the criteria of a person requiring treatment or for judicial admission, and if a petition is to be filed pursuant to subsection (3), the center may retain the person pending a hearing on the petition. If a petition is not to be filed, the prosecutor shall notify the center in writing. The center, upon receipt of the notification, shall cause the person to be discharged.

"(5) The release provisions of sections 476 to 479 of this act shall apply to a person found to have committed a crime by a court or jury, but who is acquitted by reason of insanity, except that a person shall not be discharged or placed on leave without first being evaluated and recommended for discharge or leave by the department's program for forensic psychiatry, and authorized leave or absence from the hospital may be extended for a period of 5 years."

CJI 7:8:08, in its attempt to inform the jury of the disposition of a person found not guilty by reason of insanity, paraphrases and summarizes the portions of the above statute believed to be relevant and necessary to give the jurors an understanding of events should it return the verdict at issue. However, the *ratio decidendi* of *Lyles* is that "the jury has the right to know the *meaning*" of the verdict of not guilty by reason of insanity.

103 US App DC 25. (Emphasis added.) There are,
however, so many contingencies written into the
statutory procedure that neither a jury nor any
other person could predict the disposition of the
defendant. For example, it cannot be known
whether the center for forensic psychiatry will find
that the defendant meets the criteria of a person
requiring treatment or for judicial admission.
Even if such a finding is made, it cannot be known
if the court will direct the prosecuting attorney to
file a petition for an order of hospitalization or an
order of admission. If a petition is filed, there is no
way of knowing whether it will be dismissed.
There is also no way of knowing, assuming a
petition is filed, whether the center will retain the
defendant pending a hearing on the petition.

In *Garrett v State,* 320 A2d 745 (Del, 1974), the
Delaware Supreme Court discussed the propriety
of a *Lyles*-type instruction. As in Michigan's statu-
tory scheme, the Delaware disposition provisions
gave officials discretion on whether to take steps to
assure the defendant would be confined. The court
offered the following analysis:

"The ultimate disposition of the defendant after a
verdict of not guilty by reason of mental illness, could
not have been explained to the jury with any reason-
able degree of certainty. Reading the text of, or para-
phrasing [the dispositional statute] would have left the
jury uncertain and confused, premised as it is upon (1)
the discretion of the Attorney General in moving for
commitment; (2) the discretion of the Superior Court in
acting upon such motion; and (3) the discretion of the
Superior Court in freeing the defendant 'whenever it is
satisfied that the public safety will not be thereby
endangered.' Jury uncertainty and confusion as to the
ultimate disposition of the defendant in the instant
case, [under an instruction in accord with the disposi-
tion statute], would have been increased by the opinion
testimony of representatives of the Delaware State

Hospital at the trial that the defendant was not mentally ill at the time of the offense, thus raising the possibility and probability of an early recommendation to the Superior Court that prompt release of the defendant from the Hospital would not endanger public safety." 320 A2d 749-750.

The court held that no "instruction could have been formulated in this case under [the dispositional statute] with any reasonable degree of clarity and certainty."[5] *Id.*

We agree with this reasoning and hold that because of the numerous possible contingencies under the statutory scheme, "no instruction could adequately postulate the impact of such a verdict on the appellant's future tenure in the institution." *State v Wallace,* 333 A2d 72, 79 (Me, 1975).

Assuming it is possible to draft an instruction which completely and accurately describes the disposition to be made of a person found not guilty by reason of insanity, we hold that any attempt to do so is unacceptable. The basic dispositional statute refers, in its text, to nine other statutes, without which it cannot be understood.[6] Some of

---

[5] As discussed, the dramatic changes in the statutory scheme make the *Lyles* instruction no longer plausible. We note that even under the previous dispositional statute, courts have had difficulties deciding what is the best way to enable a jury to understand the meaning of its verdict. Obviously many things can become of a defendant once his commitment begins. The question is, how much the jury should be told. See, *e.g., People v Wright,* 58 Mich App 735; 228 NW2d 807 (1975) (upholding instruction that told the jury a not guilty by reason of insanity verdict would mean the trial court no longer had control over the defendant); *People v Widgren,* 53 Mich App 375; 220 NW2d 130 (1974) (upholding instruction which told jurors that defendant could be released at any time after commitment if successful with a writ of habeas corpus).

[6] For example, the basic statute refers to MCL 330.1434; MSA 14.800(434) and MCL 330.1516; MSA 14.800(516). These provisions respectively provide:

"Sec. 434. (1) Any person 18 years of age or over may file with the court a petition which asserts that an individual is a person requiring treatment as defined in section 401.

"(2) The petition shall contain the facts which are the basis for the assertion, the names and addresses, if known, of any witnesses to the facts, and, if known, the name and address of the nearest relative or guardian, or, if none, a friend, if known, of the individual.

"(3) The petition shall be accompanied by the certificate of a physician or a psychologist, unless after reasonable effort the petitioner could not secure an examination. If a certificate does not accompany the petition, an affidavit setting forth the reasons an examination could not be secured shall also be filed. The petition may also be accompanied by a second certificate. If 2 certificates accompany the petition, at least 1 certificate shall have been executed by a psychiatrist.

"(4) Any certificate which accompanies a petition shall have been executed within 72 hours before the filing of the petition, and after personal examination of the individual."

"Sec. 516. (1) Any person found suitable by the court may file with the court a petition which asserts that an individual meets the criteria for judicial admission specified in section 515.

"(2) The petition shall contain the alleged facts which are the basis for the assertion, the names and addresses, if known, of any witnesses to alleged and relevant facts, and if known the name and address of the nearest relative or guardian of the individual.

"(3) If the petition appears on its face to be sufficient, the court shall order that the individual be examined and a report be prepared. To this end, the court shall appoint a qualified person who may but need not be an employee of the state, the county, or the court to arrange for the examination, to prepare the report, and to file it with the court.

"(4) If it appears to the court that the individual will not comply with an order of examination under subsection (3), the court may order a peace officer to take the individual into protective custody and transport him immediately to a facility or other suitable place for up to 48 hours for the ordered examination.

"(5) After examination the individual shall be allowed to return home unless it appears to the court that he requires immediate admission to a facility in order to prevent physical harm to himself or others pending a hearing, in which case the court shall enter an order to that effect. If an individual is ordered admitted pursuant to this subsection, not later than 12 hours after he is admitted the facility shall cause him to receive a copy of the petition, a copy of the report, and a written statement in simple terms explaining his rights to a preliminary hearing pursuant to subsection (8), to be present at the preliminary hearing and to be represented by legal counsel, if one physician and one psychologist or 2 physicians conclude that the individual meets the criteria for judicial admission.

"(6) The report required by subsection (3) shall contain:

"(a) Evaluation of the individual's mental, physical, social, and educational condition.

"(b) A conclusion as to whether the individual meets the criteria for judicial admission specified in section 515.

"(c) A list of available forms of care and treatment which may serve as an alternative to admission to a facility.

"(d) A judgment as to the most appropriate living arrangement for the individual.

"(e) The signatures of one physician and one psychologist or 2 physicians who performed examinations serving in part as the basis of the report.

"(7) The petition shall be dismissed by the court unless one physician and one psychologist or 2 physicians conclude, and that conclusion is stated in the report, that the individual meets the criteria for judicial admission.

"(8) An individual whose admission was ordered pursuant to subsection (5) is entitled to a preliminary hearing as follows:

"(a) Within 5 days after an individual is admitted to a facility, a preliminary hearing shall be convened to determine whether there is probable cause to believe that the individual meets the criteria for judicial admission.

"(b) The court shall cause timely notice of the time and place of the preliminary hearing and of the grounds, reasons, and necessity for his admission to be given to the individual."

Since the basic statute states that the "prosecuting attorney [is] to file a petition pursuant to [these] sections[s]," these sections must be read before one can understand the basic statute.

The general statute also states that "[t]he release provisions of this act, [MCL 330.1476-330.1479; MSA 14.800(476)-14.800(479)], shall apply to a person . . . who is acquitted by reason of insanity." Clearly, one must refer to the specific release provisions in order to understand the general statute. Those statutes provide:

"Sec. 476. (1) The director may at any time discharge a voluntarily or judicially hospitalized patient whom the director deems clinically suitable for discharge.

"(2) The director shall discharge a patient hospitalized by court order when the patient's mental condition is such that he no longer meets the criteria of a person requiring treatment.

"(3) If a patient discharged pursuant to subsection (1) or (2) has been hospitalized by court order, or if court proceedings are pending, the court shall be notified of the discharge by the hospital."

"Sec. 477. (1) A person responsible for providing treatment to an individual ordered to undergo a program of alternative treatment or a program of combined hospitalization and alternative treatment under section 468(2)(c) or (d) may terminate the treatment to the individual if the provider of the treatment considers the individual clinically suitable for termination of treatment, and shall terminate the treatment when the individual's mental condition is such that he or she no longer meets the criteria of a person requiring treatment.

"(2) Upon termination of alternative treatment or combined hospitalization and alternative treatment, the court shall be notified by the provider of the treatment.

"Sec. 478. If, upon the discharge of a patient hospitalized by court order or the termination of alternative treatment to an individual receiving alternative treatment pursuant to this chapter, it is determined that the individual would benefit from the receipt of further

these referred to statutes in turn refer to other provisions.[7] If the jury's "right to know the meaning" of its verdict is to be fulfilled, the jurors would have to be read many of these provisions.[8]

For example, the jurors are not given the statutory definitions of "a person requiring treatment," MCL 330.1401; MSA 14.800(401), or of whom may be a candidate for judicial admission, MCL 330.1515; MSA 14.800(515).[9] These are the critical definitions

___

treatment, the hospital or provider of alternative treatment shall offer him appropriate treatment on a voluntary basis, or shall aid him to obtain treatment from another source.

"Sec. 479. All leaves or absences from a hospital, other than release or discharge, and all revocations of leaves and absences under section 408, shall be governed in accordance with rules or procedures established by the department or the hospital; except that a director shall discharge any patient who has been hospitalized subject to an order of continuing hospitalization and who has been on an authorized leave or absence from the hospital for a continuous period of one year. Upon such discharge, the director shall notify the court."

[7] For example, MCL 330.2050; MSA 14.800(1050) refers in its text to MCL 330.1477; MSA 14.800(477) which in turn refers in its text to MCL 330.1468(2)(c); MSA 14.800(468)(2)(c).

[8] These statutes are more than tangentially related to the meaning of a not guilty by reason of insanity verdict. For example, the statutes discussed in footnote 7, relate to the circumstances upon which a person may receive treatment other than hospitalization. If, as the argument goes, the jurors are dominated by the fear that their not guilty by reason of insanity verdict will result in the defendant's non-confinement, then they should be told under what circumstances he may receive treatment other than hospitalization.

[9] MCL 330.1401; MSA 14.800(401) provides:

"Sec. 401. As used in this chapter, 'person requiring treatment' means (a), (b), or (c):

"(a) A person who is mentally ill, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself or another person, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

"(b) A person who is mentally ill, and who as a result of that mental illness is unable to attend to those of his basic physical needs such as food, clothing, or shelter that must be attended to in order for him to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

"(c) A person who is mentally ill, whose judgment is so impaired

upon which the decision to confine or release the defendant will be based. The proponents of the instruction argue that this is largely the jury's concern when a not guilty by reason of insanity verdict is considered, and yet, inexplicably the jury is not given these definitions. They have no way of knowing the standards upon which the decision to commit or discharge the defendant will be based. If the jury were given these definitions, they would then have four more definitions of mental states to consider besides the ones upon which they would already be properly instructed.[10] Of course, these four added definitions are irrelevant to the issue they are obliged to decide—whether beyond a reasonable doubt the defendant was sane at the time he committed the charged crime.

This illustrates the difficulties that would inevitably occur if we did attempt to explain the detailed statutory scheme to the jury. It also shows that CJI 7:8:08 gives the jury an incomplete understanding of the meaning of its verdict. We hold, therefore, that the alternative of attempting to lead the jury through a labyrinth of complex statutory provisions would be an unwise and unacceptable extension of the exception to the general rule that jurors are not to be concerned with the consequences of their verdict.

that he is unable to understand his need for treatment and whose continued behavior as the result of this mental illness can reasonably be expected, on the basis of competent medical opinion, to result in significant physical harm to himself or others. This person shall be hospitalized only under the provisions of sections 434 through 438 of this act."

MCL 330.1515; MSA 14.800(515) provides:

"Sec. 515. A court may order the admission of an individual 18 years of age or older who:

"(a) Is mentally retarded; and

"(b) Can be reasonably expected within the near future to intentionally or unintentionally seriously physically injure himself or another person, and has overtly acted in a manner substantially supportive of that expectation."

[10] See CJI 7:8:01.

Having decided that it was error to give CJI 7:8:08, we nevertheless affirm the Court of Appeals judgment in each case. It is argued that the instruction, and in particular the "60 days" language, led the juries to believe that appellants would be shortly released if they were found not guilty by reason of insanity. On the other hand, it was asserted in *Cole* that a jury, if it were not told of a defendant's disposition, would tend to convict because of the fear that he would be released if found not guilty by reason of insanity.[11] The assertion, that the giving of CJI 7:8:08 makes a guilty verdict more likely than when no dispositional instruction is given is, without information to the contrary, pure speculation. We find no error which requires reversal.

We hold that in all jury instructions given more than 30 days after the filing of this opinion, the jurors shall not be given any information including, but not limited to, CJI 7:8:07 and 7:8:08 regarding the disposition of the defendant after their verdict.

The judgments of the Court of Appeals are affirmed.

LEVIN and RYAN, JJ., concurred with BRICKLEY, J.

CAVANAGH, J., concurred with BRICKLEY, J., only in *Gillen.*

---

[11] We phrase our analysis as an alternative between the instruction given and no instruction at all because we agree with the Court of Appeals in Gillen's case that the trial court was not obliged to give the inaccurate instruction requested. In Goad's trial, defense counsel objected to CJI 7:8:08 and instead requested that CJI 7:8:07 be given. This latter instruction is even less complete and accurate than the former. It does not tell the jurors the "meaning" of their verdict and is therefore improper. Each trial court thus had the choice between giving CJI 7:8:08 or of construing the defense counsel alternate requests as objections and giving no dispositional instruction.

BOYLE, J. I dissent. The instructions on disposition were truthful and accurate. The rationale for dispositional instructions where a claim of insanity is raised could not be better stated than it was by Judge WILLIAM BEASLEY, in *People v Thomas,* 96 Mich App 210, 223; 292 NW2d 523 (1980):

"It is just as wrong and erroneous to mislead a jury into believing there is *no* public safety factor in either of those verdicts because a defendant will *not* be released until it is *certain* that he will not commit further violent crime as it is to mislead a jury into believing a defendant will automatically be released from a mental hospital within a very short time after either of these verdicts. The argument for the truth and accuracy of the jury instruction test rests on the practical assumption that under our adversary system the prosecutor and defense counsel will each indirectly and obliquely seek to persuade the jury of their respective, differing versions of what happens after a not guilty by reason of insanity verdict or a guilty but mentally ill verdict and that the best way to combat these efforts is by telling the jury what the law provides. Leaving the question of whether or not to give this jury instruction to the whim of the defendant imparts a kind of judicial gamesmanship to the trial. Confidence in the jury should override the fear that somehow knowledge of what happens to a defendant in the case of a not guilty by reason of insanity or a guilty but mentally ill verdict will result in an unjust verdict." (Emphasis in original.)

WILLIAMS, C.J., concurred with BOYLE, J.

KAVANAGH, J., took no part in the decision of these cases.