# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID MICHAEL COOPER,

Defendant-Appellant.

UNPUBLISHED
January 11, 2018

No. 333828
Kent Circuit Court
LC No. 15-002826-FH

Before: METER, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of embezzlement from a vulnerable adult in the amount of $50,000 or more but less than $100,000, MCL 750.174a(6)(a). The trial court sentenced defendant to 60 months' probation with 108 days' imprisonment to be served at the end of probation. Defendant also appeals the trial court's denial of his motion for new trial. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant moved in with his mother, Esther Byle, in 2006. Byle died in 2014. In 2010, Byle created a trust and appointed her son Thomas (Tom) Cooper as trustee. Attorney James Scales assisted Byle in creating the trust, which provided for a bequest to each of Byle's grandchildren and the remainder to be split equally between defendant and Tom. Scales also assisted Byle in preparing a pour-over will, a durable power of attorney naming Tom as her fiduciary, and a document designating Tom as her patient advocate for healthcare decisions. After the trust was established, Scales met with Byle again in July 2010. Byle was alone and had driven herself to the meeting. Byle told Scales that she wanted to change her estate plan by leaving all of her assets to defendant, stating that defendant had helped her out by moving in with her and that Tom had pressured her into preparing the trust. Scales had concerns about Byle's competence and defendant's influence over her. Nonetheless, after questioning her, he concluded that Byle had the capacity to make the changes. Therefore, Scales prepared a will and a "ladybird deed" that would have left Byle's house to defendant. Scales sent those documents to Byle for her review. A letter in Scales's file indicated that Byle later made an appointment but canceled it. She never came back to sign the documents. Scales met with Byle again in December 2010, at which time she seemed not to remember their July meeting, although she repeated her desire that defendant should inherit her estate. Scales was no longer comfortable

-1-

making the changes to the estate plan and told Byle she would have to have a medical examination so that he could determine her testamentary capacity.

In 2011, defendant took over managing Byle's finances and was her primary caregiver as she suffered from increasing cognitive and memory difficulties. Defendant testified at trial that he or Byle used Byle's money (or defendant's money for which Byle reimbursed him) to buy cigarettes for her, to buy groceries and meals at restaurants for both of them, to buy clothing for Byle, and to pay for lawn maintenance. Defendant testified that Byle also had medical expenses that were not covered by insurance.

Attorney Jason Rop, who took over working with Byle's estate plan after Scales left the law firm, testified that defendant came alone to his office in March 2012 without an appointment. Defendant appeared angry and upset that the ladybird deed and will prepared by Scales in 2010 had never been signed. Rop's meeting with defendant occurred before Rop's first meeting with Byle. Rop asked defendant to bring Byle to his office. When he later did so, Rop met with Byle and learned that she wanted to sign the revised documents that Scales had prepared in 2010 and to make defendant her sole beneficiary. Rop made a note for the file regarding his concern whether defendant might have had significant influence over Byle.

Rop testified that Byle's client file also contained a note reflecting Scales's concerns about Byle's memory back in 2010 because she had come to his office shortly after signing her estate planning documents wanting to change them, but did not remember signing the original estate planning documents. Because of his concerns, Rop met with Byle separately from defendant to find out what she wanted changed. He also required that Byle see a physician to obtain a medical opinion regarding her mental capacity. Rop stated that he had concerns regarding whether defendant had undue influence over Byle based on the fact that defendant had been aggressive and rude to Rop's staff. Rop received an opinion letter from Dr. Belen Amat-Martinez. Based upon the physician's letter and his interview with Byle, Rop felt that she was competent. Rop prepared revised documents in accordance with Byle's wishes, and Byle signed them on April 25, 2012. The revised documents consisted of a certificate of trust, trust agreement, a new will, and a new durable general power of attorney naming defendant as her fiduciary. Byle gave defendant power of attorney and named him her patient advocate. Byle transferred her home to her trust.

Dr. Amat-Martinez testified that he met Byle in March 2012, examined her physically, and performed a short mental exam. Byle scored in the normal range for the mental exam. Nevertheless, he had concerns because she presented with mild signs of dementia. She could not remember things. He concluded, however, that Byle was capable of making her own medical decisions. He did not consider or determine whether Byle had the mental capacity to make financial decisions or manage her property. He also made no determination regarding her ability to handle her day-to-day affairs, but considered her of sound mind and capable of making her own decisions.

In 2013, Byle obtained a "reverse mortgage"[1] on her house in the approximate amount $104,000, which amount was deposited into her bank account. Defendant testified that by 2013 Byle's condition had deteriorated to the point that she required a daily private nurse and additional private caregivers, which he paid for using Byle's funds. After Adult Protective Services (APS) received two complaints that defendant was neglecting and financially exploiting Byle, APS filed in the probate court a formal petition for an accounting, which resulted in the probate court appointing a conservator and guardian for Byle in 2014.

Byle's guardian and conservator, William Leeder, testified that Byle would not speak freely when defendant was present and that defendant told her what to say. Leeder further testified that defendant controlled the family's access to Byle; after the probate court ordered defendant to move out of Byle's house in 2014, Tom and other family members were able to visit Byle regularly. Leeder testified that defendant had attempted to sell Byle's car in 2014, and generally refused to cooperate with Leeder's attempts to determine Byle's assets, often using vulgar and threatening language.

A forensic accountant testified to a detailed review of Byle's finances and ultimately determined that Byle's estate had suffered a loss of 101,000 to $111,000 from 2011 to 2014. A medical expert for the prosecution who met with Byle in 2014 and reviewed her mental examinations opined that Byle had suffered from Alzheimer's dementia at the end of her life and that her mental condition significantly declined from 2012 to 2014.

The jury convicted defendant as described. After filing an appeal, defendant moved this Court to remand for a *Ginther*[2] hearing and to allow defendant to move for a new trial on the issue of his trial counsel's ineffectiveness. This Court granted his motion.[3]

On remand, defendant argued that his trial counsel was ineffective for failing to call Scales as a witness and for failing to introduce evidence that Byle's trust permitted defendant to compensate himself as a caregiver. Scales testified to the events in 2010. Scales also testified that according to his review of the 2012 trust documents, defendant had no duty to keep records or make any reports on the expenditure of Byle's funds as long as he acted in accordance with her wishes, and defendant was allowed to compensate himself as a caregiver. Defendant's trial counsel also testified, stating that his trial strategy included showing that a valid will and trust existed, that a family member had become upset when Byle changed the beneficiary of her estate to defendant and disinherited him, that Byle was of sound mind when she made the changes, and

---

[1] A reverse mortgage is a Federal Housing Administration-insured loan for seniors that allows them to convert their home equity into cash using the home as collateral and does not require repayment until the home is sold or no longer used as a primary residence. See https://www.hud.gov/program_offices/housing/sfh/hecm/rmtopten (last visited December 14, 2007).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v David Michael Cooper*, unpublished order of the Court of Appeals, entered April 18, 2017, (Docket No. 333828).

that defendant had the authority to spend Byle's money and did so reasonably. He testified that he decided not to call Scales as a witness because his testimony potentially could have led the jury to question Byle's mental capacity as early as 2010.

The trial court denied defendant's motion for a new trial, finding that defendant's trial counsel's decision not to call Scales was sound trial strategy, and noted that defense counsel had raised the issue of reasonable compensation in his opening statement and had asserted that the jurors would hear that defendant was allowed reasonable compensation. The trial court further noted that the estate planning documents were admitted at trial, and that defense counsel had urged the jurors in his closing argument to look at them.

This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel provided him ineffective assistance by failing to call Scales to testify regarding Byle's intent to change her estate planning documents and by failing to present evidence that Byle's estate planning documents allowed defendant to take compensation for caregiving services. Therefore, the trial court erred by not granting him a new trial. We disagree.

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review for clear error the trial court's findings of fact, if any, and review de novo its conclusions of law. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. We also review de novo constitutional issues. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003). We review for an abuse of discretion a trial court's denial of a defendant's motion for a new trial. *People v Schrauben*, 314 Mich App 181, 187; 886 NW2d 173 (2016). An abuse of discretion exists if the trial court's decision fell outside the range of reasonable and principled outcomes. *People v Norfleet*, 317 Mich App 649, 655; 897 NW2d 195 (2016).

A defendant bears the burden of establishing that defense counsel provided ineffective assistance by showing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." See *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted). Defendant must overcome a strong presumption that trial counsel provided effective assistance. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42,

61; 687 NW2d 342 (2004). Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel," *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

If called to testify, Scales could have informed the jurors that Byle wished in July 2010 to change her estate planning documents to make defendant her sole heir, but such testimony would have allowed for cross-examination regarding Scales's concerns about Byle's mental capacity. Defense counsel's testimony established that he decided to avoid the risk of evoking the jury's sympathy for Byle or inviting the jury to consider that Byle may have had diminished mental capacity as early as 2010. Defense counsel made a well-reasoned strategic decision to not call Scales as a trial witness to prevent prejudicing his client's defense. *Rockey*, 237 Mich App at76. Therefore, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness. See *Trakhtenberg*, 493 Mich at 51.

Additionally, our analysis of the record leads us to conclude that defense counsel provided effective assistance by not eliciting testimony explaining that Byle's estate planning documents allowed defendant to take compensation for caregiving services. Defendant did not testify that he compensated himself as a caregiver, but rather that never took any of Byle's money for himself. Additionally, defense counsel did mention that the trust documents allowed for reasonable compensation, and the trust documents were provided to the jury. We conclude that to the extent defense counsel decided not to emphasize the "reasonable compensation" defense, counsel made a well-reasoned strategic decision to not prejudice his client's defense by drawing attention to an issue that defendant's own testimony undermined. Therefore, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness on this ground as well. See *id*.

Even if defense counsel's performance fell below an objective standard of reasonableness, we cannot reasonably conclude that Scales's testimony and evidence regarding defendant's right to compensate himself would have changed the outcome of defendant's trial. See *id*. The evidence presented at trial established that defendant controlled and excluded Byle's contacts with others, including her entire family. Defendant also initiated the estate planning document changes in 2012. The forensic accounting established that defendant spent a significant amount of Byle's money from 2011 through 2014. Defendant testified that Byle's mental capacity declined during that time and that she required the assistance of daily caregivers. Although some receipts explained where money had been spent, the vast majority of the expenditures lacked explanation. Evidence established that defendant wrote numerous checks to cash, to himself personally, and for payment of his credit cards bills. Defendant made substantial daily cash withdrawals from Byle's bank accounts for which defendant offered little or no explanation. We believe that reasonable jurors could conclude beyond a reasonable doubt from the substantial evidence presented at trial that Byle was a vulnerable adult of whom defendant took advantage by obtaining and using her money and property through either fraud, deceit, misrepresentation, coercion, or unjust enrichment to directly or indirectly benefit himself, in violation of MCL 750.174a(1).

Scales's testimony likely would not have tipped the scales in favor of defendant. At best, Scales's testimony would have assisted and harmed the defense equally. At worst, the jurors could have concluded that Byle's mental capacity had so substantially diminished by the end of

2010 that she was a vulnerable adult whose vulnerability defendant exploited. Further, defendant did not testify that he had paid himself reasonable compensation, but rather testified that he had not spent any of Byle's money on himself. In the face of that testimony, it is far from clear that the jury would have reached a different result had defendant's right to compensation been further emphasized. Therefore, a probability does not exist that defendant would have been exonerated had defense counsel presented such evidence. See *Trakhtenberg*, 493 Mich at 51.

We conclude that defendant has failed to overcome the presumption that defense counsel's failure to call Scales as a witness was a matter of sound trial strategy. *Rockey*, 237 Mich App at 76; see also *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999). Further, we disagree with defendant's assertion that Scales's testimony would have completely debunked the prosecution's theory of the case and resulted in a different trial outcome. We also conclude that defendant has failed to demonstrate that his defense counsel was ineffective in failing to present evidence that Byle's estate planning documents allowed defendant to take compensation for caregiving services.

Accordingly, defense counsel was not ineffective, and the trial court therefore did not abuse its discretion by declining to grant defendant a new trial.

### III. PROSECUTORIAL MISCONDUCT

Defendant also argues that the prosecution committed misconduct[4] by deliberately misstating the evidence and by asking the jurors to infer that defendant pressured Byle into changing her trust in 2012, when in fact the prosecution knew that to be untrue because Byle had wanted to make him her sole heir in 2010. We disagree.

To preserve for appeal an issue of prosecutorial misconduct, the defendant must contemporaneously object and request a curative instruction, or move for a mistrial. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). In this case, defendant failed to do either and therefore did not preserve this issue for appeal. We review for plain error unpreserved claims of prosecutorial misconduct. *Unger*, 278 Mich App at 235. To demonstrate plain error warranting appellate relief, a defendant must show that: (1) error occurred; (2) the error was plain, meaning clear or obvious; and (3) the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. It is defendant's burden to demonstrate prejudice. *Id*. Error requiring reversal cannot be found where a curative instruction would have "alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, . . . and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235.

---

[4] Because defendant does not allege inadvertent or technical error, but rather a deliberate effort by the prosecution to "grossly misstate" the evidence to the jury, we do not characterize defendant's claim as one of prosecutorial error. See *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015).

"Issues of prosecutorial misconduct are decided case by case, with the reviewing court examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Because a prosecutor's role and responsibility is to seek justice and not merely convict, "the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A prosecutor's remarks, however, are not considered in a "vacuum" and "must be read in context." *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). "A prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief . . . and is not required to state inferences and conclusions in the blandest possible terms." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). Prosecutors are generally given great latitude regarding their arguments. *Unger*, 278 Mich App at 236.

The record reflects that the prosecution, in its closing argument, summarized the testimony of several witnesses who testified regarding Byle's poor memory, cognitive impairment, and inability to care for herself. The prosecution told the jurors that based on all the evidence, the witnesses' testimony, and reasonable inferences from that testimony, it could conclude that Byle was vulnerable during the relevant 2011-2014 time period. The prosecution pointed out that Byle changed her estate planning documents in 2012. The prosecution's remarks focused on defendant's proximity to Byle, his influence over her, and his personal interest in having Byle make him trustee and sole heir. The prosecution argued that Byle's 2012 changes to the estate plan occurred when she lacked the ability to make her own decisions. Close examination of the prosecution's remarks in the context of the entire closing argument leads us to conclude that the remarks did not constitute plain error because they were based on the evidence and reasonable inferences arising from that evidence.

Further, the trial court specifically instructed the jury that the lawyers' statements and arguments were not evidence and were not to be considered evidence by them. One may reasonably conclude that the trial court's instructions sufficed to dispel any prejudice; therefore, this unpreserved issue does not warrant appellate relief. *People v McPherson*, 263 Mich App 124, 139; 687 NW2d 370 (2004).

## IV. CONFRONTATION CLAUSE

Defendant argues that the trial court infringed upon his right of confrontation by prohibiting his counsel from cross-examining defendant's brother Tom regarding whether Tom knew if he would gain a personal interest in Byle's estate were defendant to be convicted. We disagree. We review de novo the question of whether a defendant was denied the constitutional right to confront complaining witnesses. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). We review a trial court's evidentiary rulings for an abuse of discretion. See *People v Brownridge*, 459 Mich 456, 460; 591 NW2d 26 (1999). An abuse of discretion exists if the trial court's decision fell outside the range of reasonable and principled outcomes. *Norfleet*, 317 Mich App at 655.

The right of an accused to confront the witnesses against him or her is secured by both the United States and Michigan Constitutions. US Const Am VI; Const 1963, art 1, § 20. We analyze the right of confrontation under the Michigan Constitution in the same manner as the

right is analyzed under the Sixth Amendment's Confrontation Clause. In *People v Nunley*, 491 Mich 686, 697-698, 821 NW2d 642 (2012), the Michigan Supreme Court observed:

> The Confrontation Clause is "primarily a functional right" in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials. Functioning in this manner, "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused."

The United States Supreme Court has held that the constitutional right of confrontation solely guarantees an opportunity for effective cross-examination, not for a cross-examination that is effective to whatever extent and in whatever way a defendant wishes. *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988).

A defendant has constitutional rights to present a defense and to confront the witnesses against him, but those rights are not without limitations. *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006); *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993), lv den 442 Mich 933 (1993). A defendant must comply with procedural and evidentiary rules established to ensure fairness and reliability in the verdict, and other legitimate interests of the criminal trial process must be promoted. *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984); *Unger*, 278 Mich App at 250. The Confrontation Clause protects the defendant's right for a reasonable opportunity to test the truthfulness of a witness's testimony. *Adamski*, 198 Mich App at 138. The trial court can impose limits on cross-examination to address concerns of harassment, prejudice, confusion of the issue, repetitive or marginally relevant interrogation. *People v Ho*, 231 Mich App 178, 189-190; 585 NW2d 357 (1998); see also MRE 611(a). But a trial court's limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation. *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998).

Violations of the right to adequate cross-examination are subject to a harmless-error analysis. *Id*. at 644-645. In *Kelly*, this Court instructed that the test of whether such an error was harmless requires a determination of the following factors: (1) the importance of the witness's testimony, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness, (4) the extent of cross-examination otherwise permitted, and (4) the overall strength of the prosecution's case. *Id*. at 645.

Before trial, defendant requested the trial court's permission to cross-examine Tom regarding whether he was aware of how his share of Byle's estate would be impacted, if at all, by a guilty verdict for defendant. The trial court carefully analyzed whether and to what extent Tom's cross-examination could be conducted to prevent undue prejudice to either the prosecution's case or defendant's defense. Significantly, when defendant requested the trial court's permission to inquire whether Tom was predisposed to falsely testify or make misrepresentations during his testimony for personal gain, defense counsel proffered no evidence that Tom knew what, if any, the consequences might ensue if defendant were convicted. No one knew whether Tom believed that he would personally gain an interest in Byle's estate in that

event. To ascertain whether anything of import and relevance to the case might be derived from cross-examining Tom on the topic, the trial court questioned Tom, and allowed defense counsel and the prosecution to question Tom, regarding the extent of Tom's knowledge and understanding of any potential consequence for him if defendant were to be convicted. After the voir dire, the trial court declined defense counsel's request to cross-examine Tom regarding his knowledge of potential benefits to himself if defendant were convicted.

The record shows that Tom's testimony during voir dire established that he had no knowledge or understanding of any consequence to himself that might result from defendant's conviction. If cross-examined on the subject before the jury, Tom's testimony would not have provided any basis for defendant to argue that Tom harbored bias against defendant or had any motive for fabricating testimony against defendant to enable himself to personally gain an interest in Byle's estate.

Tom's testimony that he had no idea whether he would benefit from defendant's conviction lacked importance because it did not reflect any bias or inclination to testify falsely for personal gain, and therefore had no bearing on his credibility. Further, the record establishes that no evidence contradicted Tom's voir dire testimony. During trial, defendant took full advantage of his opportunity to cross-examine Tom on all relevant issues. The record indicates that the prosecution had a strong case against defendant. Finally, the prosecution correctly argued that the more extensive cross-examination proposed by defendant would have improperly allowed the jurors to consider potential sentencing consequences, such as restitution, that defendant faced if convicted. See *People v Goad*, 421 Mich 20, 25-27; 364 NW2d 584 (1984) ("The rule in Michigan has always been that neither the court nor counsel should address themselves to the question of the disposition of a defendant after the verdict."); *In re Spears*, 250 Mich App 349, 352-353; 645 NW2d 718 (2002). Had the trial court allowed Tom's cross-examination on the topic, the prosecution's case likely would have been prejudiced.

We conclude that the trial court's limitation on Tom's cross-examination did not deny defendant a defense. The record establishes that the trial court's and counsel's voir dire of Tom revealed that there was no basis for such an examination. Therefore, we hold that the trial court did not err by excluding Tom's cross-examination on a topic about which he had no knowledge or understanding, and therefore, the trial court neither abused its discretion nor infringed upon defendant's right of confrontation. *Benton*, 294 Mich App at 195; see also *Brownridge*, 459 Mich at 460.

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra