*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MAURICIO ANTONIO PINCHEIRA,

        Defendant-Appellant.

UNPUBLISHED
February 11, 2026
9:19 AM

No. 371632
Ingham Circuit Court
LC No. 23-000372-FH

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b), and sentenced to serve 300 days in jail, with credit for 85 days, plus 60 months' probation. Defendant appeals as of right, challenging his conviction and his sentence. We affirm.

## I. FACTS

Defendant's daughter, NP, alleged that when she was approximately eleven years old, defendant sexually assaulted her. According to NP, one time while sleeping in her parents' bed between defendant and her mother, she woke up when she felt defendant move his hand up under her shirt and across her chest, moving his hand back and forth. NP also experienced other instances of unwanted touching from defendant during her early teens. NP eventually told a therapist about the incident, who reported the matter to Children's Protective Services. Defendant was charged with two counts of CSC-II under MCL 750.520c(2)(b) (victim under 13 years old) (Counts I and II),[1] and alternatively with CSC-II under MCL 750.520c(1)(b) (victim was a member of the perpetrator's household) (Count III).

---

[1] Count II related to another allegation that defendant improperly touched NP by putting his hand on NP's buttocks while she was watching television.

At trial, NP testified that during the assault in question, the touching was "a moving motion across both [breasts], staying there like slightly, but mostly moving like back and forth almost like rubbing." She testified that she was afraid during the assault because her father was touching her "somewhere where he shouldn't be touching me." She testified that during the assault she pretended to be asleep and kept her eyes shut, and then the touching stopped.

NP testified that the assault occurred when she was in elementary school, but that she did not recall her age. The prosecuting attorney sought to refresh NP's recollection through her diary, resulting in the following colloquy:

> *Q.* [D]id you keep a diary as a child?
>
> *A.* I did.
>
> *Q.* And do some of those entries in the diary, do they have dates on them?
>
> *A.* Yes.
>
> *Q.* And did you sometimes write about things that happened as it relates to your dad [defendant] in that diary?
>
> *A.* I did.
>
> *  *  *
>
> Q. Actually, would looking at your diary, or a particular entry of your diary, help you date when this happened?
>
> A. Yes.
>
> Q. [NP], I'm gonna show you an entry. I just want you to read it to yourself. If that then refreshes your memory as to being able to put a date timeframe on this incident that you've testified to let me know, and then I'm gonna ask you questions about it; okay?
>
> A. Okay.
>
> Q. I don't want you to read this out loud; okay?

The prosecutor then asked NP whether there was a date at the top of the entry that she could remember without reading, to which NP replied "9/3/17." NP confirmed that she was eleven years old at the time she wrote the diary entry, and that the assault occurred before she wrote the entry. NP also testified regarding other sexually suggestive interactions involving defendant, both before and after the assault in question.

At trial, the theory of the defense was that the touching did not happen, or that NP had misconstrued innocent touching as sexual in nature because she suffered from mental-health issues, including anxiety. Defendant presented the testimony of friends and family generally

stating that defendant was an affectionate person whom they trusted with other children. Defendant himself testified that that he would never touch his daughter for sexual arousal or gratification.

During closing argument, the prosecutor argued that NP's testimony proved beyond a reasonable doubt the elements of CSC-II under the three counts alleged. To rebut the defense theory that NP had misconstrued benign contacts as sexual touches because of anxiety, or that NP was seeking attention, the prosecutor argued that the evidence demonstrated that NP's anxiety diagnosis occurred after her diary entry about the abuse.[2] Defense counsel did not object to the prosecuting attorney's references to NP's alleged recording of the assault in her diary.

During closing argument, the defense argued that defendant was facing the second-most serious assault charge under state law, and that defendant's life was in the "hands" of defendant's legal defense team and now the jury. In rebuttal, the prosecutor stated:

> I just want to get something out of the way real quick. I don't know how many times [defense counsel] told you that these charges are life altering or that . . . the defendant's life is in your hands. But, I want to be really clear about something. You're going to receive an instruction that you are not to consider penalty, and those statements were meant to inject your consideration of penalty in this case. And, the jury instructions tell you that you can't do that. But, I'm gonna tell you something else. This isn't a life offense. He can't get life.

Defense counsel objected, stating, "I did not mention penalty. Life altering does not mean only a prison sentence for the rest of your life. That should be stricken from the record." The trial court responded by instructing the jury that it "must not consider possible penalties." After closing arguments, defense counsel moved for a mistrial, asserting that the prosecutor improperly informed the jury that defendant was not facing a life sentence, intentionally injecting information regarding penalty to bolster a weak case. The prosecutor replied that the comment was in response to defense counsel's reference to the potential penalty facing defendant. The trial court denied the motion, reasoning as follows:

> I do think that the defense made some implications about penalty that maybe had gone a bit too far, but I do also agree that saying it's life altering doesn't mean it's a life offense. In any event, I think both sides went close to the penalty line that shouldn't be crossed. And I think the jury instruction, however, adequately cures that. We've heard from the Court of Appeals time and time again that jurors are presumed to follow their instructions, and my experience is that they take it very seriously. I very clearly told them possible penalty should not influence their decision.

---

[2] In his brief on appeal, defendant states that NP began to struggle with mental health at age 15.

During deliberations, the trial court denied the jury's request for a copy of the diary, informing the jury that the diary was not admitted into evidence because it was hearsay, and had been used for only the limited purpose of refreshing NP's recollection of a date. The jury found defendant guilty of Count I, and not guilty of Counts II and III.

## II. DISCUSSION

## A. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution failed to present sufficient evidence to prove the elements of the offense beyond a reasonable doubt. We disagree.

We review de novo a challenge to the sufficiency of the evidence to determine whether there was sufficient evidence to justify a rational trier of fact finding that the elements of the offense were proven beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). In doing so, we view the evidence in the light most favorable to the prosecution and draw all reasonable inferences and make all credibility choices in favor of the verdict. *Id*.

The elements of a crime may be proven by circumstantial evidence and the reasonable inferences arising from that evidence. *Id*. In this case, defendant was convicted of CSC-II under MCL 750.520c(2)(b). In that regard, MCL 750.520c provides, in relevant part:

(1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:

(a) That other person is under 13 years of age. [MCL 750.520c(1)(a).]

MCL 750.520a defines sexual contact as follows:

(q) "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:

(*i*) Revenge.

(*ii*) To inflict humiliation.

(*iii*) Out of anger. [MCL 750.520a(q).]

Defendant does not dispute that NP was under 13 at the time of the alleged assault but argues that no evidence was introduced from which a reasonable juror could conclude that defendant intentionally touched NP or that the alleged touching was done for sexual arousal or gratification, or done for a sexual purpose. The evidence introduced, however, supports the reasonable inference that defendant's touching of NP's breasts was intentional: her testimony on

-4-

direct examination that she was awakened when defendant put his hand under her shirt and rubbed his hand back and forth across her breasts. From NP's testimony, a rational jury could infer that defendant acted intentionally.

Defendant argues that NP's testimony did not establish that he was awake during the alleged incident and did not establish how long the alleged assault lasted. But NP's lack of certainty regarding the length of the assault and whether defendant was awake did not negate the reasonable inference arising from NP's testimony that defendant intentionally touched her breasts. The jury evidently found NP's testimony credible, and this Court defers to the credibility determinations of the trier of fact. See *People v Jarrell*, 344 Mich App 464, 480; 1 NW3d 359 (2022).

Defendant also argues that even if he intentionally touched NP, the evidence did not demonstrate that the touching was for a sexual arousal, gratification, or purpose. However, only minimal circumstantial evidence is required to demonstrate a defendant's state of mind regarding intent. *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). From NP's description of the incident, a rational trier of fact could infer that defendant acted with a sexual purpose.

Additionally, the other-acts evidence the prosecution introduced suggested that defendant had an inappropriate sexual interest in NP. NP testified that defendant had commented that she had a "J Lo booty," referencing the derrière of a celebrity to whom he was apparently sexually attracted. NP also testified that on one occasion when she objected to sleeping in the same bed with defendant, defendant agreed that he would sleep elsewhere while she slept with her mother; when she awoke, however, defendant was sleeping next to her in the bed. NP also testified that on one occasion, defendant forced her to "spoon" with him in bed; when she objected and tried to get out of bed, he pulled her back into the bed, trapping her leg underneath his and thrusting his hips and pressing his groin area against her, such that she could feel his penis through their clothing. NP also testified that when she was younger, defendant would spend too much time ostensibly drying her vagina after a bath. Again, we defer to the credibility determinations of the jury which found NP's testimony sufficiently credible, see *Jarrell*, 344 Mich App at 480, and conclude that the evidence was sufficient to support defendant's conviction.

## B. PROSECUTORIAL ERROR

Defendant contends that the prosecutor introduced error at trial by referencing that NP wrote in her diary about the sexual assault and by referencing the potential penalty for defendant if convicted. We disagree that error warranting reversal occurred.

Defendant did not object at trial to NP's testimony that she wrote about the assault in her diary nor request a curative instruction; this issue therefore is unpreserved. See *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). We review unpreserved claims of prosecutorial misconduct for plain error, which is an error that is clear or obvious and which affects the defendant's substantial rights, meaning that the error affected the outcome of the lower court proceedings. *Id*. In addition, under plain-error review, reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Jarrell*, 344 Mich App at 482 (quotation marks and citation omitted).

During closing argument, prosecutors generally are given great latitude; a prosecutor is permitted to argue the evidence and the reasonable inferences of the evidence as it relates to the prosecutor's theory of the case. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). In addition, a curative instruction generally is sufficient to cure any prejudicial effect of prosecutorial error; jurors are presumed to follow their instructions. *Id.* at 235. We consider claims of prosecutorial error case by case, examining the record and evaluating the prosecutor's remarks in context. *People v Jackson*, 313 Mich App 409, 425-426; 884 NW2d 297 (2015).

Defendant contends that the prosecutor improperly referenced facts not in evidence by stating four times during closing argument that NP wrote in her diary about the alleged assault.[3]

---

[3] In context, it is apparent that the four references to the complainant's writing about the assault in her diary were in anticipation of defense arguments. The prosecuting attorney first referenced the diary in relation to the defense theory that the complainant's mental illness had caused her wrongly to perceive the touching as sexual in nature. The prosecuting attorney argued as follows:

> The problem with that is, is that there's no evidence to prove that the mental illness that she was subsequently diagnosed with in the fall of 2022, that that was present in her life when she first started talking about this incident happening.
>
> If you recall, when she testified I asked her "How old were you when this incident in the bed happened?" And she said "I don't know." And . . . this was after I had already asked her questions about keeping a diary. And I said "Is there something, an entry in your diary, that would be dated, that would help you determine how old you were at the time that this incident occurred *because you would have talked about this incident in that dated entry*?" And, she said "Yes."
>
> And, I refreshed her memory with that dated entry. I asked her to read it. And, I said "*Does the content of that dated entry where you discussed this incident in the bed* help you remember what the date was of that dated entry?" And she said "It does. This entry in my diary is dated September of 2017." And if you recall, we did the math and that she would have been 11 when she . . . wrote that entry. Meaning, that that incident had to have occurred sometime before she was 11 *because she was writing about it* as it had happened in the past when she was 11. [Emphasis added.]

Later, in reference to the same defense argument, the prosecutor stated: "Yes, [NP] disclosed when she was 16, but the evidence shows that she first wrote about this incident that occurred in the bed in a diary entry from September of 2017 when she was 11."

The prosecutor again referenced NP's writing about the assault in the diary to rebut an anticipated argument that she had fabricated the assault to draw attention to herself:

> You have no allegation or evidence in this record that the disclosure was done for attention. And, also keep in mind the timing of that. In order to believe that the

Defendant argues that NP never testified that she wrote about the assault in her diary, that no such inference reasonably could be drawn from her testimony, and that these references seriously affected the fairness of the trial because the jury relied on the misrepresentation, as demonstrated by their request for a copy of the diary during deliberations. We conclude, however, that the record plainly gave rise to a reasonable inference that the complainant wrote about the assault in her diary. During direct examination, the complainant admitted that she sometimes wrote in her diary about things that happened with defendant, and testified that the diary entry from September 2017, which she reviewed to refresh her recollection regarding how old she was when the sexual assault occurred, was written after the assault. From this testimony the jury reasonably could infer that the entry included a reference to the assault.[4] Again, prosecutors generally have great latitude during closing argument to argue the evidence and the reasonable inferences arising from the evidence. *Unger*, 278 Mich App at 236. In addition, because defendant did not object at trial and request a curative instruction, we review this issue for plain error, which requires defendant to demonstrate that the error affected the outcome of the lower court proceedings, and wherein reversal is warranted only if the plain error "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Jarrell*, 344 Mich App at 482 (quotation marks and citation omitted). Moreover, the trial court instructed the jury that the lawyers' statements and arguments were not evidence, and jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235.

Defendant also argues that the prosecuting attorney improperly referred to the possible penalties defendant would face if convicted, and thereby potentially affected the outcome of the trial. Defendant objected to the prosecutor's reference to defendant's potential penalty if convicted, thereby preserving that issue for appeal. We review preserved issues of prosecutorial error de novo to determine whether the defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004).

A defendant is entitled to "a verdict by the jury upon the evidence without consideration of the punishment to be administered." *People v Goad*, 421 Mich 20, 27; 364 NW2d 584 (1984). Therefore, "neither the court nor counsel should address themselves to the question of the disposition of a defendant after the verdict." *People v Torres (On Remand)*, 222 Mich App 411, 423; 564 NW2d 149 (1997).

---

disclosure as it relates to the incident in the bed was a false disclosure to gain some sort of attention, again, you would have to believe that she was planning that since at least September of 2017 *when she first discussed in her diary that this incident in the bed happened*. So, she was strategizing since she was at least 11, if not younger, to plant the seed that she was some day going to falsely accuse her father of that incident for some attention seeking? Does that belie reason and common sense? No. That goes to this idea that the defense theory that [NP] is lying isn't supported by the evidence. [Emphasis added.]

[4] We also note that the entry in question in NP's diary arguably was admissible as a recorded recollection under MRE 803(5).

In this case, during closing argument defense counsel argued that defendant was facing the second-most severe of CSC charges, that the charge was life-altering, and that defendant's life was in defense counsel's, and now the jury's, "hands." In response, the prosecutor argued during rebuttal that defendant would not be subject to a life sentence if convicted. Defense counsel objected, and the trial court instructed the jury that it was not to consider penalty. Viewing the prosecutor's remark in context demonstrates that the challenged remark was in response to defense counsel's suggestion that defendant was facing a very serious penalty if convicted. When defense counsel objected to the prosecutor's clarifying remarks about the potential penalty, the trial court provided a curative instruction, advising the jury that they were not to consider what penalty was possible if they were to convict defendant.

Again, jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235. Because the prosecutor's statement was in response to defense counsel's advocacy, and a corrective instruction was provided, defendant has not established an error warranting reversal. See *People v Duncan*, 402 Mich 1, 16; 260 NW2d 58 (1977) ("[c]ertain . . . remarks, although if standing alone could be seen as improper, do not constitute reversible error . . . because of their responsive nature . . . and because any unduly prejudicial effect could have been eliminated by a curative instruction") (citations omitted).

Affirmed.


/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel